**FALEULA FANO REAVIS, Plaintiff,**

**v.**

**MATALENA LELEUA, MALIA ASIATA, MAUA ASIATA,
and FIAPIA MEREDITH, Defendants.**

High Court of American Samoa
Land and Titles Division

LT No. 06-01

March 21, 2003

Before RICHMOND, Associate Justice, SAGAPOLUTELE, Associate Justice, and TUPUIVAO, Associate Judge.

Counsel: For Plaintiff, Katopau T. Ainu`u
For Defendants, Matalena Leleua, Malia Asiata, and Maua Asiata. S. Salanoa Aumoeualogo
For Defendant Fiapia Meredith, Arthur Ripley, Jr.

OPINION AND ORDER

This is an interfamily controversy involving the Fano family's communal land. The Secretary of Samoan Affairs unsuccessfully mediated the matter and, on October 5, 2000, issued a certificate of irreconcilable dispute. Then, plaintiff Faleula Fano Reavis ("Faleula") commenced this action to evict defendants Matalena Leleua ("Matalena"), Malia Asiata ("Malia"), Maua Asiata ("Maua") (collectively "the occupants") and Fiapia Meredith ("Fiapia") from the portion of communal land at issue, and to recover damages based on alleged tortious actions. The action came on regularly for trial. Both counsel were present.

## Findings of Fact

Faleula is a blood member of the Fano family o the Village of Faga`alu. She was born and raised on the Fano family's communal land. In the mid-1950s, her family moved to a dwelling on a plot of Fano family land in Faga`alu ("the upper mountainside site") assigned in the recognized Samoan customary manner to her mother, and perhaps her family as well, by the Fano family's *sa`o* ("senior chief" or "head chief"). The upper mountainside site of land is a small level area partially up the Faga`alu side at the mountain above Blunts Point at the western side of the entrance to Pago Pago Bay. Beyond a point partway up the mountainside, the plot is accessible only by a dirt footpath.

Faleula left American Samoa in 1962 when she was age 17 years. Her mother and other family members lived in the family house on the upper mountainside site at that time. At some point before her death in 1965, however, Faleula's mother moved from the residence on the upper mountainside site to another house on Fano family communal land closer to the main public road located along the shoreline at the base of the mountain in Faga`alu ("the lower mountainside site"). However, some family members remained on the upper mountainside site at that time. While living outside American Samoa, Faleula married Charles C. Reavis ("Charles"), and they lived in the U.S. mainland until 1995. Then, after their youngest daughter graduated from high school, they relocated to American Samoa, intending to permanently reside here.

While she resided abroad, Faleula only visited American Samoa occasionally. She came in 1965 during her mother's last illness. Some of Faleula's family members were still then living in the house on the upper mountainside site. During this visit, she informed the incumbent family *sa`o*, Fano Shimasaki, of her desire to eventually return and live on the upper mountainside site. At some point between 1965 and 1972 however, all of Faleula's family members vacated the house on the upper mountainside site. Faleula next visited in 1981 and 1982. On both occasions, she found Matalena and her family living on the upper mountainside site. However, she reaffirmed with Fano Shimasaki her

221

Matalena was born and raised in [Western] Samoa. Her father is the *sa`o* of her family there, and she still maintains contact with them. Matalena is not a blood member of the Fano family, but she is related to Fano Shimasaki's mother. She married Iosefo Asiata ("Iosefo") in 1949, and Malia and Maua are their children. Instigated in substantial part by Fiapia, Fano Shimasaki's sister, Matalena and her family came to American Samoa in 1969 and began living with the Fano family in 1970. In 1972, Fano Shimasaki in the customary Samoan manner assigned the area of the vacated upper mountainside site to Matalena and her family, which included Iosefo, Malia, Maua, and Matalena's sister and her husband. By then, only remnants remained of the dwelling and plantation of Faleula's family on the upper mountainside site. Matalena and her family redeveloped the area and have lived there ever since.

After Faleula and Charles relocated to American Samoa in 1995, they initially moved onto, and still reside, on the lower mountainside site. She actually has a 55-year lease of land in this area, signed by the presently incumbent *sa`o*, Fano Salilo in 1995, but she professes no present intention of building a residence there. Instead, Faleula made, and continues to make, it known to Fano Salilo, and at least indirectly to Matalena and her family, that she considered, and still considers, the upper mountainside site to be the assigned Fano land of Matalena's family, and she wanted, and now wants, to live there.

Before long, serious trouble erupted in the relations between Faleula and Charles, on one side, and Matalena and her family on the other side. The incidents generally described below began in 1995 and periodically continued at least up to the issuance of the preliminary injunction in this action in 2001. The core issue was, and still is, Faleula's desire to reside on the upper mountainside site. It appears that the initial provocation of the serious incidents that followed came when Faleula cut down some of Matalena's bananas. Matalena retaliated, mostly through her family members as agents.

These incidents included physical violence and threatened violence against both Faleula and Charles. The serious incidents of assaults occurred in 1996 to 1998. Charles, with his law enforcement background, was then employed in the American Samoa Government's Department of Public Safety, but even though some incidents were reported, he and Faleula obtained very little police assistance. Also included were episodes of undue and frequent harassment and annoyance through profanity, name calling, and by throwing rocks at, and trash onto, the premises occupied by Faleula and Charles. While Faleula and perhaps Charles were not entirely innocent of further provocative action, clearly Matalena and her family responded and initiated retaliatory

actions of a far more serious and unjustified nature.

Fano Salilo, as the *sa`o*, attempted to intercede and restore peace and harmony among all, both family blood and nonblood members living within the family structure. Fiapia also assisted in Fano Salilo's efforts. Unfortunately, Fano Salilo does not appear to be a strong and forceful leader. Even though in October 1995 Fano Salilo notified Matalena to move out of the upper mountainside site in Faleula's favor, he changed his mind and supported, and still supports, his predecessor's assignment of the site to Matalena in 1972. Moreover, he apparently now holds Faleula principally responsible for the disruption in family relationships, citing the good will existing before her return here. In any event, his efforts failed.

We hasten to point out that following the return of Faleula and Charles to the Territory in 1995, and in addition to her peacemaker's efforts, Fiapia has neither played a negative role in the property dispute, nor has been directly involved in any of the confrontational incidents of violence or harassment.

## Discussion

A. Right to Occupy and Use the Upper Mountainside Site

▉▉ A Samoan family's *sa`o* controls the occupancy and use of the family's communal land. *Seventh Day Adventist Church v. Maneafaiga*, 23 A.S.R.2d 150, 154 (Land & Titles Div. 1993); *Lutu v. Taesaliali`i*, 11 A.S.R.2d 80, 87-88 (Land & Titles Div. 1989). His relationship to the family's communal land is likened to a trustee for the benefit of the family's members as a whole. *Lutu*, 11 A.S.R.2d at 88; *Talili v. Satele*, 4 A.S.R.2d 23, 27 (Land & Titles Div. 1987). His authority extends to making customary assignments of the occupancy and use of portions the family's communal lands, usually to family members. *Seventh Day Adventist Church*, 23 A.S.R.2d at 154; *Lutu*, 11 A.S.R.2d at 88. His decisions on customary assignments of the family's communal lands are final, subject only to judicial review for arbitrary and capricious actions. *Pen v. Lavata`i*, 25 A.S.R.2d 164, 168 (Land & Titles Div. 1994); *Lutu*, 11 A.S.R.2d at 88. Ordinarily, so long as the customary assignee of a portion of the family's communal land provides *tautua* ("customary service") to the *sa`o*, the assignment endures for the assignee's lifetime. *Afoa v. Taaifili*, 26 A.S.R.2d 47, 51 (Land & Titles Div. 1994) (quoting *Seventh Day Adventist Church*, 23 A.S.R.2d at 155). However, the *sa`o* also retains authority to reassign the portion to another in the event of the assignee's prolonged nonuse of the premises. *Lutu*, 11 AS.R.2d at 88.

In this case, the assignment of the upper mountainside site was clearly to Faleula's mother, who is now deceased. Even if the assignment is

223

construed to include Faleula and other members of her family, the upper mountainside site was unoccupied by anyone in the family for a significant period of time, perhaps as long as seven years. Although Faleula expressed to the *sa`o* on several occasions her desire to again live on the site some day, no other member of her family was using the site in 1972, and had not used it for some time, and it was readily apparent at that juncture that Faleula had no concrete plans to permanently return to American Samoa in the foreseeable future. The circumstances could even be construed as a surrender of the assignment by Faleula and her family. *See generally Talagu v. Te`o*, 4 A.S.R. 122 (Land & Titles Div. 1974). In any event, under these circumstances, Fano Shimasaki, the incumbent *sa`o* in 1972, acted well within his authority when he assigned the site to Matalena, and perhaps her family as well. We therefore conclude that Faleula does not have any right to occupy and use the upper mountainside site, and that Matalena is the lawful occupant and user of that site.

## B. Permanent Injunctive Relief

After a full and final trial on the merits, the Court may issue a permanent injunction upon finding that a basis for it is established and determining that a judgment for money damages will provide an inadequate remedy for the wrong claimed. A.S.C.A. §§ 43.1301(f), (g) and 43.1302.

In light of the lengthy history of violence, threatened violence, harassment, and annoyance by Matalena and her family towards Faleula and Charles, we find that money damages are an inadequate remedy in the situation at hand and conclude that permanent injunctions are the most suitable legal means, under the circumstances, to guard against the occurrence of further episodes of this nature between the parties. Matalena and her family need to be permanently enjoined from any further actions of violence and harassment against Faleula and Charles. Faleula should be enjoined likewise from any such actions against Matalena and her family to further promote peaceful relations between the parties.

## Order

1. Based on the proper customary assignment by the Fano family *sa`o* in 1972, Matalena, not Faleula is entitled to occupancy and use of the upper mountainside site.

2. Until further order of the Court, Matalena, Malia, and Maua, and their officers, agents, servants, employees, attorneys, and family members, and those persons in active concert or participation with them are permanently enjoined from assaulting, threatening to assault, harassing,

annoying, or otherwise disturbing the peace of Faleula and Charles.

3. Until further order of the Court, Faleula, and her officers, agents, servants, employees, attorneys, and family members, and those persons in active concert or participation with her, are permanently enjoined from assaulting, threatening to assault, harassing, annoying, or otherwise disturbing the peace of Matalena, Malia, and Maua.

4. The cause of action against Fiapia is dismissed with prejudice

It is so ordered.